### B. F. HUGHES v. R. E. McFARLAND.

### GEORGE W. CARROLL v. R. E. McFARLAND.

#### Decided April 1, 1910.

**1.—Land Agent—Commissions—Contract—Evidence.**

In a suit by a land agent against C. and H. jointly for a sum of money claimed to be due him by defendants for services rendered in finding for defendants such bodies of land as they wished to purchase and putting them in communication with the owners thereof, evidence reviewed and held insufficient to support a finding of the trial court that C. and H. were jointly interested in said deal, and that they agreed to buy said lands for their mutual profit, or that the lands were dealt with by them as their joint property.

**2.—Same—Pleading and Proof—Variance.**

An allegation that plaintiff was entitled by express contract to reasonable compensation for services rendered in a land deal, is not supported by proof of a contract that plaintiff was to have one-third of the commission paid to and received by one of the defendants.

Appeal from the District Court of Newton County. Tried below before Hon. W. B. Powell.

*A. L. Davis,* for appellant Hughes.

*Parker, Hefner & Orgain*, for plaintiff in error Carroll.

*Geo. E. Holland* and *V. H. Stark*, for appellee McFarland.

REESE, ASSOCIATE JUSTICE.—This is an appeal from a judgment of the District Court of Newton County in favor of R. E. McFarland as plaintiff, against B. F. Hughes and George W. Carroll as joint defendants. The judgment was for $3,475. The trial was without a jury. The trial court prepared and filed conclusions of fact and law which were in the record. Hughes' appealed, and Carroll sued out a writ of error, and in this court, upon agreement of the parties, the two cases were consolidated.

The foundation of the action is the claim by appellee that Hughes and Carroll are indebted to him in the sum of $6,950 upon an express contract, as to which the petition alleges:

"That heretofore, to wit, on or about January 15, 1907, defendants Carroll and Hughes, acting together in a common enterprise, and the defendant Hughes acting as the agent of the defendant Carroll, duly authorized thereunto so to act by said defendant Carroll, were desirous of purchasing timber lands in suitable blocks and of a certain kind desired by them in Newton and adjoining counties in Texas, and plaintiff was engaged in the real estate business, and said defendants applied to plaintiff to locate for them such lands as they so desired and the owners of same, and to assist them in purchasing said lands, for which they obligated and bound themselves to pay to plaintiff reasonable compensation.

"That in pursuance of such employment plaintiff located the owners of certain lands and placed the owners of said lands in communication with said defendants Carroll and Hughes for the purpose of closing whatever trade they might desire to make, said services being rendered in direct line as requested by said defendants and according to the direction of said defendants, and in obedience to the demand made by the said defendants on plaintiff concerning the services demanded of him by said defendants and asked by them to be rendered by him."

It is further alleged that, acting under this contract and as a result of the efforts of appellee, "defendants acting together and the said Hughes acting for said Carroll purchased certain lands," for which they paid $139,000, and that five percent thereon was a reasonable compensation for appellee's services in the premises, amounting to $6,950, for which appellee sues.

Appellants answered by general demurrer, general denial, and, by special plea under oath, denied that any partnership existed between them.

As a basis for the judgment the trial court found the following facts, each of which, by appropriate assignments of error, is assailed as being unsupported by the evidence:

"That on January 15, 1907, defendants Carroll and Hughes were desirous of purchasing a suitable tract of timber, and upon direction of defendant Carroll defendant Hughes called on the plaintiff for his services as real estate agent to assist them in obtaining the desired land.

"That upon express agreement with the said Hughes that plaintiff was to be paid a commission in case of a trade by defendants, and that plaintiff placed said Hughes in direct communication with the owners of said lands for the purpose of making the most beneficial trade for the defendants.

"That, being assured by said Hughes that defendants were to take care of plaintiff in his demands for a commission, the owners of the property made a net price to defendants for said lands, and gave, in the name of defendant Hughes, a short option on the same.

"That defendants, in the presence of plaintiff, agreed for their mutual benefit and profit to purchase said land, and later secured an additional option to purchase same for the same price, taken in the name of defendant Carroll.

"That said lands were dealt with by defendants as their joint property, and they so regarded and treated it.

"That defendants made by said transaction a net profit of about $17,000, about $5,500 of which was by their mutual agreement taken by the defendant Hughes as his share thereof, and the remainder by the defendant Carroll.

"That the defendants still held about 200 acres of land so purchased, which was by their joint agreement offered to plaintiff for his services and refused by him, and defendants both then denied any liability to him.

"That plaintiff, during the continuance of all negotiations, did everything asked of him by defendants, etc."

We have carefully examined the statement of facts and can find nothing that amounts to the dignity of evidence to justify the conclusion that Carroll and Hughes were jointly interested in the land deal referred to in the findings, or that they agreed to buy the lands for their mutual profit, or that the lands were dealt with by them as their joint property. It is upon these conclusions of fact that the court predicates its conclusion of liability on the part of Carroll. Assuming that appellee, about the latter part of January, entered into the contract with Hughes about which he testified, and that Carroll referred Hughes to McFarland, as admitted by Carroll, the evidence conclusively shows that at that time Carroll individually had no interest in the matter, nor in any land trade that Hughes was to make. Carroll was the vice-president and general manager of the Nona Mills Company, and was interested in buying for his company, or his company was interested in buying timbered land in that section of country. Hughes, it seems, by an understanding with Carroll, was trying to get control of such lands with the intention of disposing of them to the Nona Mills at such advance in price as might be agreed upon, his commissions or compensation to come out of such increase in price. In pursuance of this plan Hughes got a fifteen days' option on the lands which were afterwards purchased for his own account, with the idea of disposing of them to the Nona Mills Company. Hughes' short option being about to expire, Carroll took an option in his own name, being persuaded or convinced that if the Nona Mills Company did not take the lands he could sell them at a profit to others. The Nona Mills Company declined to take the lands, and Carroll concluded to

take them himself. About this time there seems to have been an understanding, not very definite as to its terms, that if Carroll succeeded in selling the lands at a profit Hughes was to have for his compensation a share, not defined, in such profits, whether he was to get any compensation, and the amount thereof, depending on such sale. This is what is referred to by Hughes as his "contingent interest in the lands," as is made clear by the testimony, and is uncontradicted except by the most shadowy suspicion that they were jointly interested in the lands. Carroll sold the lands, with the assistance of Hughes, at a profit of about $17,000, and he paid Hughes in all $5,500 as his share. No money of Hughes' went into the land, and if there had been a loss Carroll would have had to stand it all. This did not make them partners, and even this agreement was made some time after the alleged contract between Hughes and McFarland. Something is undertaken to be made about the offer of Hughes to give McFarland 200 acres of the land by way of compensation, and the court finds that this 200 acres was held by Carroll and Hughes jointly. The uncontradicted evidence shows that this 200 acres still remained unsold by Carroll and that he agreed that if Hughes could settle McFarland's claim, which he was then pressing, with this 200 acres, he (Carroll) would convey it to McFarland, charging it up to Hughes, with whom he had not then settled in full for his commissions growing out of the land deal. If these facts had been contradicted by McFarland, or by other testimony, it could not be said that the court could not properly have accepted his statement, but they are not so contradicted, and the testimony of Hughes and Carroll, in so far as it is uncontradicted by other evidence or by circumstances throwing suspicion upon it, can not properly be disregarded. In the entire record we can find no evidence that authorizes the conclusions of fact upon which alone any judgment against Carroll can be predicated.

There is nothing to warrant the suspicion, and it is at best only a suspicion, that, at the time of the alleged contract between McFarland and Hughes upon which appellee's cause of action rests, Carroll and Hughes were engaged in a joint understanding to buy lands for their joint account for the purpose of selling them to the Nona Mills Company at a profit, or that Hughes acted as the agent of Carroll in making such contract. The entire judgment against Carroll rests upon this suspicion. If the case had been tried by a jury upon this evidence, it would have been the duty of the court to instruct a verdict for defendant Carroll, and hence it follows that it is the duty of this court to reverse the judgment as to him and to render judgment here in his favor, and it is so ordered.

It can not be said that there is no evidence in the record which would authorize a judgment against appellant Hughes for some amount upon proper pleadings, but no recovery could be had upon the allegations of the present petition under the evidence. From the allegations of the petition hereinbefore set out, it appears that appellee's claim is based upon an express contract for reasonable compensation for his services. He testified that by express contract with Hughes he was to receive as his compensation a share in the commissions or profits received by Hughes. This contract was made in contemplation

of the purchase by Hughes either for, or for the purpose of sale to, the Nona Mills Company, which fell through entirely; but if it could be applied to the subsequent deal between Hughes and Carroll the contract would have entitled appellee to a share in the commissions or profits made by Hughes in that transaction. A contract for reasonable compensation is an entirely different matter, and especially for such compensation based upon the customary percent of the purchase price of the land, as was determined by the court.

Appellee's testimony is clear and positive, and repeatedly made, that his contract was for a share of Hughes' commission or profits. He said he would not have claimed half, as Hughes was doing most of the work, but expected about one-third as his share as about right. Facts proved, but not alleged, can no more be made the basis for a recovery than facts alleged but not proven. There was a fatal variance between the contract alleged and that proved. This applies as well to the judgment against Carroll, but we have held that in no event could there be any recovery against him.

For the errors indicated the judgment against Hughes is reversed and the cause remanded.

This disposes of the appeal. It is not profitable to discuss the several assignments of error in detail, and we have not done so.

*Reversed and rendered in part and remanded in part.*
Writ of error refused.